UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

RORY KESSLER

        PLAINTIFF          INDEX # 15CV 6111 (NGG)(RLM)

   -AGAINST-

OFFICER JAVED,                  AMENDED VERIFIED
SGT. FRANK DICHRISTINA, AND    COMPLAINT WITH JURY
PO SOTIRIOU                    DEMAND

        DEFENDANTS
_____

Plaintiff, Rory Kessler, through his counsel, Tamara Harris, alleges as follows:

## THE PARTIES

1. Rory Kessler, the plaintiff, resides at 5747A Xenia Street, Corona, New York 11368.

2. Defendants Officer Javed, Officer Sotiriou, Sgt. Frank DiChristina at the 109 precinct, and other NYPD officials at the 109 precinct (John Does), maintain a principal place of business at 37-05 Union Street, Flushing NY.

3. Defendant City of New York maintains a principal place of business at 100 Church Street, New York, New York.

## JURISDICTION

4. This United States District Court Eastern District of New York has jurisdiction over this matter because the case raises a federal question; plaintiff and defendants reside in Queens County and the occurrence giving rise to these allegations occurred in Queens County.

<u>DEFENDANTS OFFICER JAVED, OFFICER SOTIRIOU,  AND SGT. FRANK DICHRISTINA VIOLATED 42 USCS § 1983 IN THAT THEY DENIED PLAINTIFF EQUAL PROTECTION THE LAWS UNDER THE FOURTEENTH AMENDMENT OF THE US CONSTITUTION AND ENGAGED IN CRUEL AND UNUSUAL PUNISHMENT AGAINST PLAINTIFF, BECAUSE OF HIS MENTAL DISABILITY, IN VIOLATION OF THE EIGHT AMENDMENT AND FOURTEENTH AMENDMENT OF THE US CONSTITUTION</u>

5. Plaintiff, Rory Kessler, is mentally disabled and suffers from Autism, Bipolar Disorder, Aspergers, and Tourettes Syndrome.

6. He takes anti-psychotic medication to treat his Autism, Bipolar Disorder, Aspergers, and Tourettes Syndrome, including, but not limited to, Divalproex, Quetiapine Fumarate, Benztropine and Abilify.

7. These medications make plaintiff urinate excessively and trigger immense pain in his bladder in the event he cannot urinate frequently and as needed.

8. On July 1, 2015 plaintiff was arrested and brought to the 109 precinct, after he was searched on the street and allegedly found to be in a possession of a gravity knife.

9. Plaintiff was taken to Queens General Hospital by Officer Sotiriou, who was the partner of Officer Javed, where he was evaluated as an emotionally disturbed person.

10. Thereafter, Plaintiff was taken to the 109 precinct and placed in a cell at the 109 precinct.

11. Plaintiff advised Officer Javed, Officer Sotiriou, and Sgt. DiChristina that he had Autism, Bipolar Disorder, Aspergers, and Tourettes Syndrome; and that he that he needed to use the bathroom to urinate because he was

on multiple psychiatric medications that caused him to urinate frequently.

12. He further advised defendants he would suffer severe pain if he could not urinate, due to the effect of the medications.

13. Plaintiff begged and pleaded with all defendants to let him use the bathroom; and repeatedly told them he was in extreme pain as a result of not being able to urinate.

14. Despite pleading with the above defendants, plaintiff was told to shut up and the other defendants taunted him- refusing to allow him to use the bathroom for a protracted period of time.

15. When plaintiff continued to insist he needed to use the bathroom because he was on multiple medications for mental illness, the above NYPD officials, began to mock him.

16. When plaintiff tried to reiterate he had mental illness and should not be treated like an animal by being deprived of the right to use the bathroom, the defendants mentioned above began to make horse noises as if plaintiff was some kind of animal.

17. Plaintiff was forced to remain in a cell for 11 hours without being given the right to use the bathroom for such a protracted period of time, that he was forced to urinate on himself to alleviate the excruciating pain in his bladder- caused by defendants deprivation of his right to use a bathroom.

18. All defendants maliciously and intentionally caused plaintiff to suffer pain, by depriving him of the right to use the bathroom- knowing that he

was mentally ill and on medication that necessitated his use of the bathroom; and knowing that he was in severe pain.

19. All defendants taunted and mocked plaintiff as a result of him notifying them he suffered from Bipolar, Aspergers, Autism, an Tourettes Syndrome and made horse noises to insinuate he was some kind of an animal because of his mental disability. They further caused him to urinate on himself by denying him the right to use the bathroom for a protracted period of time during his 11 hour incarceration in the 109 precinct's cell.

20. Defendants did not treat other prisoners that were in the holding cells in such a fashion, and permitted those prisoners to use the bathroom upon request.

21. The only distinction between plaintiff and the other prisioners was that plaintiff had notified defendants in the precinct of his mental disability- and was therefore treated as an animal because of his psychosis. The other prisoner's had no known psychosis and did not vocalize the existence of any mental illness to the officers. Nor did these individuals appear to suffer from psychosis.

22. Defendants were on notice and knew of plaintiff's mental illness when they forced him to suffer such inhumane, cruel and unusual punishment.

23. This disparate treatment against plaintiff was a direct result of his mental disability and was defendant's reaction to learning that he suffered from Autism, Aspergers, Bipolar Disorder, and Tourettes Syndrome.

24. Defendants were state actors acting under the color of state law when they engaged in disparate and cruel and unusual treatment against plaintiff because of his mental disability; and engaged in conduct which deprived plaintiff of the rights, privileges and immunities secured by the constitution or laws of the United States; to wit, the Fourteenth Amendment Equal Protection Clause and the Eighth Amendment prohibition on cruel and unusual punishment.

25. Defendants' conduct deprived plaintiff of the equal protection of the laws under the Fourteenth Amendment, as they targeted him for abuse because of his mental disability and treated him differently that other prisoners being held at the 109 precinct at that time. Plaintiff was the only prisoner forced to urinate on himself to alleviate the pain from having to hold his urine for such a protracted period of time during an 11 hour incarceration; and other prisoners who did not suffer from mental illness were given unfettered access to the bathroom.

26. Defendants conduct violated clearly established statutory or constitutional rights and a reasonable person would have known that defendants' conduct violated such rights.

27. The Eighth Amendment to the Constitution, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the imposition of cruel and unusual punishment of prisoners, such a plaintiff, and guarantees prisoners humane conditions of confinement. Defendants violated plaintiff's rights under the Eight Amendment and Fourteenth Amendment.

28. Defendants violated plaintiff's rights under Eighth Amendment, in that their conduct constituted a deprivation that was objectively and sufficiently serious, and which showed that defendant's acted with deliberate indifference to plaintiff's health or safety.

29. Plaintiff told all defendants of his mental disability and that his medication caused him to urinate; and that he suffered severe and excruciating pain if he had to hold his bladder.

30. Defendant's refusal to allow plaintiff to use a bathroom to urinate for a protracted period of time, and to hold in his urine to the point where plaintiff was forced to urinate on himself to alleviate the pain- constituted an unnecessary and wanton infliction of pain by all defendants, and an intentional effort by them to delay and deny him the ability to alleviate the pain.

31. Defendants, conduct was willful and malicious, with the intent to cause harm.

32. Defendants' conduct caused plaintiff severe physical pain, embarrassment, shame, stress and anguish

33. WHEREFORE, plaintiff seeks 5 million dollars punitive damages, 5 million emotional damages, and compensatory damages in the amount of $5,935 in legal fees and costs, which continue to accrue.

CONVERSION

34. Officer Javed confiscated plaintiff's property and never returned it, including his silver coins.

35. He did not have permission or authority to take plaintiff's silver coins and mix them with regular coins.

36. This constitutes conversion.

37. Plaintiff demands trial by jury.

38. WHEREFORE, plaintiff demands compensatory damages.

Dated:     December 9,2016

/S/TAMARA HARRIS
The Law Office of Tamara Harris
111 Broadway, Ste 706
New York, NY 10006
(212) 334-1050

VERIFICATION

Tamara Harris, having been duly sworn, deposes and says that deponent is the attorney for plaintiff in the within action; that defendant has read the foregoing amended complaint and knows the content thereof; that the same is true to deponent's own knowledge, except as to the matters therein to be alleged upon information and belief, and as to those matters deponent believes the to be true. This verification is made by deponent instead of said plaintiff because the plaintiff resides outside New York County, where deponent maintains her office.

Dated: December 9,2016                                    /s/Tamara M. Harris